# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**NORMA ESPINA,**

    *Plaintiff*,

**v.**                                                    **Case No. 5:21-CV-1176-JKP**

**CITY OF SAN ANTONIO,**

    *Defendant*.

## <u>MEMORANDUM OPINION AND ORDER</u>

The Court has under consideration *Defendant's Motion for Summary Judgment* (ECF No. 29). The motion is ripe for ruling. For the reasons that follow, the Court grants the motion.

## I. BACKGROUND

This is an employment discrimination and retaliation case. Plaintiff began working for the City of San Antonio ("the City") in 2009. ECF No. 29 at 2. She was employed as an Information Technology – Applications Senior Analyst, which is a Civil Service position. *Id*. She worked in this capacity for approximately one or two years. Dep. Espina 23:7-23 (Def.'s Ex. A-1 attached to ECF No. 29-2). Plaintiff then became a Lead Applications Analyst, and remained in that role until she was terminated. *Id*.

Plaintiff experienced performance and behavioral difficulties in the summer of 2019. *See* ECF Nos. 29-4 (July 18, 2019, Written Reprimand) and 29-5 (Employee Success Plan). The Court will examine each counseling statement, reprimand, success plan, and discussion worksheet in greater detail below. The City terminated Plaintiff's employment on May 18, 2020. ECF No. 29-17. She appealed to the Municipal Civil Service Commission, which upheld the City's termination decision. ECF No. 29-19.

Plaintiff filed her original complaint on November 24, 2021. ECF No. 1. She filed her First Amended Complaint (ECF No. 11) on January 14, 2022, which the City later sought to dismiss

through a motion (ECF No. 12) filed under Fed. R. Civ. P. 12(b)(6). On August 15, 2022, the Court issued an opinion granting, in part, and denying, in part, the motion to dismiss. *See* ECF No. 21.

The City filed its motion for summary judgment on July 6, 2023, seeking dismissal of Plaintiff's remaining claims. ECF No. 29. It provides numerous evidentiary exhibits to support the motion. *See* ECF No. 29-2 through 29-22 (Exs. A through U). After the Court's ruling on the motion to dismiss, the following claims remain in this action: (1) Discrimination and/or harassment on the basis of race pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and 42 U.S.C. § 1983; (2) Discrimination and/or harassment on the basis of perception of national origin pursuant to § 1983 and Title VII; (3) Retaliation pursuant to § 1983 and Title VII; (4) Discrimination and/or retaliation on the basis of disability pursuant to Section 504 of the Rehabilitation Act; (5) Discrimination on the basis of age pursuant to the Age Discrimination in Employment Act ("ADEA"); and (6) "Violation" of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., including discrimination, harassment, interference, and retaliation.

Plaintiff opposes the motion without providing any additional evidence. *See* ECF No. 30. With Defendant's reply brief (ECF No. 31), the motion became ripe for ruling.

## II. SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and a fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When "the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301-02 (5th Cir. 2020) (quoting *In re: La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)). The movant need not "negate the elements of the nonmovant's case." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis omitted) (parenthetically quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (en banc)). In these instances, however, the movant must "point[] out that there is no evidence to support a *specific element* of the nonmovant's claim"; rather than making "a conclusory assertion that the nonmovant has no evidence to support his *case*." *Id.* at 335 n.10.

In considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Once the movant has carried its summary judgment burden, the burden shifts to the non-movant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are

not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). Additionally, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

### III. EQUAL EMPLOYMENT OPPORTUNITY COMPLAINTS

Plaintiff filed two complaints with the City's Human Resources Department that resulted in separate Equal Employment Opportunity ("EEO") Investigations. In the first incident, Plaintiff alleged that her supervisor made comments about national protests that occurred after the November 2016 presidential election. ECF 29-20. After viewing national headlines on the internet, the following interaction occurred:

> Espina's supervisor. Geneva Thiesen, walked up behind her and Ms. Espina remarked to her. "Can you believe what is going on in our country?;" to which Ms. Thiesen replied, "If everyone would just get in line and stop whining and protesting, we can just get everything back in order. If this was white America this wouldn't be happening."

*Id*. (italics removed).

Plaintiff was offended by the racial connotations and believed her work environment became uncomfortable. *Id*. Richard Hernandez, Human Resources Administrator, and Lori Steward, Human Resources Director, interviewed an employee named Joe Yantas. *Id*. He stated he overheard Ms. Thiesen make the comment that formed the basis of Plaintiff's complaint, and he also found the comment offensive. *Id*. On November 30, 2016, Hernandez and Steward interviewed Ms. Thiesen. She recalled the conversation she had with Plaintiff on November 16, 2016, and that it related to the most recent national election. *Id*. at 2. Ms. Thiesen expressed to Plaintiff that she (Ms. Thiesen) was pleased with the election results, and that the protestors were "a bunch of spoiled brats whining because they didn't get their way." *Id*. (italics omitted). Ms. Thiesen denied making a racial comment. *Id*.

Nearly three years later, on October 7, 2019, Plaintiff filed a complaint of racial harassment

with the Human Resources Office. ECF No. 29-21. Plaintiff states David Sweet, Information Technology Manager, made the following comments:

> (1) Mr. Sweet described Ms. Espina's work cubicle as "Mexican;" (2) Mr. Sweet mentioned to Ms. Espina. "You hardly have an accent;" (3) Mr. Sweet has described Ms. Espina as "lazy" to others, which she interpreted as being a lazy Mexican; (4) Mr. Sweet has expressed frustration on teleconference meetings with individuals with heavy accents; and (5) Ms. Espina also believes that her current supervisor, Senior IT Manager Jeannette Kriewald, is unfairly scrutinizing her work performance due to her (Espina's) race.

*Id*. During this investigation, Steward interviewed six employees regarding Plaintiff's allegations. None of the employees substantiated the allegations except for the comment about understanding individuals with heavy accents during teleconferences. *See id*. None of the employees thought that the comment was evidence of Mr. Sweet's inherent bias, but instead was an observable fact. *Id*. On October 21, 2019, Steward interviewed Mr. Sweet, and he denied the allegations. *Id*. He admitted he had difficulty understanding some callers with heavy accents during teleconferences, but this was not based on the caller's race. *Id*. On October 22, 2019, Steward interviewed Ms. Kriewald, and she denied Plaintiff's allegations. *Id*. Kriewald stated Plaintiff was on a performance improvement plan because her work is not up to the necessary standards for successful mission accomplishment. *Id*. She stated race did not play any role in her efforts to improve Plaintiff's work performance. *Id*.

Plaintiff filed a formal Charge of Discrimination on January 22, 2021, with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"). ECF No. 29-22. She states the earliest discrimination occurred in 2016, and the latest incident of discrimination occurred on May 18, 2020. *Id*.

### IV. DOCUMENTED DEFICIENCIES AND DISCIPLINARY ACTION

Defendant provides several documents reflecting performance deficiencies of Plaintiff or disciplinary action that it has taken against Plaintiff. *See* ECF Nos. 29-4 through 29-14.

## A. July 2019 Written Reprimand

The City issued a written reprimand of Plaintiff for actions it deemed to be in direct viola-

tion of the municipal civil service rules. *See* ECF No. 29-4 at 1. In full, the reprimand states:

> You are receiving this Written Reprimand for acts of Insubordination and failing to carry out Instruction. On July 15th and 17th, you sent several emails to me and other coworkers questioning and criticizing the direction given to you by your direct supervisor to include the following:
>
> July 15, 2019, email to me documenting a one-on-one meeting with your manager openly criticizing and questioning the actions of your manager. You copied Richard Jernigan, one of your team mates, on this email.
>
> July 17, 2019, email to me documenting a one-on-one meeting with your manager openly criticizing and questioning the actions of your manager. You copied Michael Whitehead, one of your team mates, on this email.
>
> July 17, 2019, email to Mike Carnevale, a support engineer for one our support vendors, describing a conversation with your manager openly questioning the Information she had provided you.
>
> July 17, 2019, email to Deborah Duron stating that you would not be completing her request for support earlier in the day, indicating that this was direction from your manager, which was not the case.
>
> These actions are unacceptable as they undermine instructions given to you from your manager and do not comply with the City's Core Values of Professionalism, Integrity and Teamwork. In the future, any questions that you have should be addressed directly with your manager. Failure to do so will be considered Insubordination and will be disciplined accordingly.

*Id*. The City informed her:

> Continued poor work performance, misconduct or other rule violations will subject you to additional discipline up to and including termination in accordance with AD 4.11. Please acknowledge receipt of this written reprimand by signing below. A copy will be provided to you.

*Id*. at 2. Plaintiff signed the reprimand and noted that she did "not agree with the interpretation of

these events." *Id*.

## B. July 2019 Employee Success Plan

On July 22, 2019, the City completed an Employee Success Plan (ESP) for Plaintiff "to

identify areas requiring improvement, give an employee the opportunity to correct the area(s) and

outline what the successful performance standard is as it relates to the area of concern." ECF No.

29-5 at 1. Section III sets out the "Areas of Concern" and states in full:

> Lacks engagement and attention to deadlines. As a Lead, you should be knowledge-able in the applications that you support You should be able to prioritize work in order to meet your deadlines. Communicate with your manager if you need help prioritizing or if you foresee an issue with a deadline.
>
> Lacks a clear understanding of the processes and functions of the application that you support, which results in your inability to participate in discussions or meet deadlines. As a Lead, you should have a clear understanding of business and tech-nical requirements and should be able to communicate these to your team and cus-tomers.
>
> Does not seek guidance or ask meaningful questions to understand issues or gain a clear understanding of application processes or issues. This results in time consum-ing meetings with the vendor while seeking solutions to issues that have been com-municated incorrectly.
>
> Lacks initiative to communicate and share information with team members. Re-moves team members from communication where they should be included to en-sure that [they] stay engaged. This results in the team's inability to understand is-sues and provide accurate guidance for solutions.
>
> Lacks a sense of urgency when responding to incidents as they are received into Remedy. This often causes a delay in our team's ability to respond to customers.
>
> Lacks initiative to provide cross training for team members. As a Lead, you are expected to provide leadership, coaching and mentoring to your team members.
>
> Weekly reports lack details related to the work performed and do not provide mean-ingful information regarding deliverables.
>
> Fails to demonstrate the ability to execute baste analytical and problem solving skills. One of the tasks assigned to you on April 1, 2019 involved the review and modification of a Refresh document which was previously provided by the vendor. You were also responsible for providing a draft project plan to outline an approach for performing the system refresh and have been unable to produce a document or results of analysis after 90 days.

*Id*. Plaintiff and her supervisor signed the ESP on July 25, 2019. *Id*. at 2.

### C. August 2019 Employee Discussion Worksheets

With respect to an observation period of July 25, 2019, through August 9, 2019, the City

completed an Employee Discussion Worksheet ("EDW") regarding a discussion with Plaintiff that

occurred on August 14, 2019. *See* ECF No. 29-6. Such document is for the "supervisor's file, not

employee personnel file," and "is not a disciplinary action." *See id*. at 3. The EDW reflects Ms. Kriewald met with Plaintiff on July 25, 2019, to discuss expectations of Plaintiff's work which were outlined in the July 22, 2019 ESP. *Id*. at 1. It further reflects that, on August 1, 2019, Ms. Kriewald and Kevin Goodwin met with Plaintiff to establish new goals for Plaintiff, which would supersede the goals that were adopted in that ESP. *Id*. Plaintiff and her supervisor signed the EDW on August 27, 2019. *Id*. at 3.

With respect to an observation period of August 15, 2019, through August 30, 2019, the City completed an EDW regarding a discussion with Plaintiff that occurred on August 30, 2019. *See* ECF No. 29-7. "Section 4 - Observations" of this EDW states in full:

Employee Success Plan delivered on July 22, 2019 outlined a milestone date of July 26, 2019 to complete a detailed plan to include estimated completion dates and proposed task assignments to execute the environment inventory, which will outline the differences in configuration settings, foundation and transactional data, objects, and procedures between Dev, QA, and Production environments.

During a One-on-One meeting on August 1, 2019 with Jeannette Kriewald and Kevin Goodwin, new project goals were established and communicated to you via email on that day.

During a One-on-One meeting on August 14, 2019 with Jeannette Kriewald and Christina Sanchez, project goals and status were discussed and documented. As part of our discussion, the delivery date of the Final Remedy Inventory Plan was extended to August 28, 2019 to enable you to complete the inventory and inform details of the Final Inventory Plan.

During a One-on-One meeting on August 29, 2019 with Jeannette Kriewald and Christina Sanchez, you reported that data gathering is complete. However, no analysis of gathered data was performed and no report of findings has been produced. We agreed to modify the timeline to allow you additional time to analyze data.

*Id*. at 1. "Section Five - Next Steps" of the EDW states in full:

[1.] At your request, the following goals were reset and agreed upon during our One-on-One session on August 29, 2019.

2. Environment Refresh –

a. August 29, 2019 - September 11, 2019 -Analysis of Inventory data. You will present a document outlining your findings weekly during one-on-one meetings.

b. September 11, 2019 - a formal document of the results of analysis performed on inventory data. This document will include details about differences observed between each environment.

c. September 25, 2019 - Draft Plan outlining tasks, dependencies, costs, risks for the Environment Refresh - Status: Pending.

d. October 2, 2019 - Final Refresh Plan Due - Status: Pending.

e. October 16, 2019- Complete Refresh In DEV Environment- Status: Pending.

f. October 30, 2019 - Complete Refresh in QA Environment- Status: Pending.

3. Remedy system upgrade –

a. November 13, 2019 - Draft Upgrade Plan Due - Status: Pending.

b. November 22, 2019 - Final Upgrade Plan Due - Status: Pending.

*Id*. at 2. Plaintiff and her supervisor signed this EDW on September 5, 2019. *Id*.

## D. September 2019 Written Reprimand

Ms. Kriewald reprimanded Plaintiff again on September 24, 2019, and stated, "You are receiving this Written Reprimand for failure to follow Instructions. You failed to complete a Remedy Inventory Plan by the agreed upon date of August 20, 2019 and failed to complete a Data Analysis report by the agreed upon date of September 11, 2019." ECF No. 29-8 at 1. The final paragraph of the reprimand states,

> Your disregard for direction and inability to meet expectations has caused a significant delay in the Remedy Upgrade Project timeline and has caused you to miss other assignment deadlines previously set as part of this project. You have failed to follow the instructions and guidance given to you throughout the project and repeatedly dispute feedback and resources that are intended to aid you in completing this task. It is my goal to see you be successful in your position and become an effective contributor to the department and to the City of San Antonio.

*Id*. Plaintiff was notified that continued poor performance could result in further discipline, including termination. *Id*. at 2. Ms. Kriewald signed the reprimand and Ms. Sanchez noted that Plaintiff "refused to sign." *Id*.

### E. October and November 2019 Employee Discussion Worksheets

On October 1, 2019, Plaintiff met with Jeannette Kriewald and Kevin Goodwin to establish new project goals and deadlines. ECF No. 29-9 at 2. The EDW memorialized the contents of the discussion. *Id*. Certain goals which were set on August 1, 2019, were reset to later in 2019. *Id*.

The November 18, 2019 EDW reflects that Plaintiff's ESP, which was scheduled to expire on September 22, 2019, was extended to November 1, 2019. ECF No. 29-10 at 1. Ms. Kriewald determined the plan did not work and closed it as unsatisfactory. *Id*. In closing the plan, she stated:

> My expectation was that you would have been receptive to coaching and feedback provided during this reporting period and apply lessons learned to produce project planning documents. These plans were meant to guide you through a thought process for analyzing problems, developing a methodical approach to building solutions, and executing the plan to produce desired results. Your inability to accept constructive feedback on areas of improvement resulted in numerous meetings which produced little or no results and documents which lacked the expected level of detail.
>
> You have demonstrated an inability to execute analytical and problem solving skills, which resulted in resetting of priorities and project deadlines. Functioning in the role of Application Support Lead, it is my expectation that you have the ability to work independently to understand and troubleshoot issues In the Remedy application.
>
> You have demonstrated the inability to gain a firm understanding of the concepts for planning and executing work necessary for supporting the application for which you have been assigned since April 1, 2019.

*Id*.

### F. February 2020 Employee Discussion Worksheet

The February 20, 2020, EDW required Plaintiff to submit an updated version of the Remedy System DB Refresh (Remedy Refresh Plan) and other assignments. ECF No. 29-11 at 1. Ms. Kriewald directed Plaintiff to communicate and coordinate with all relevant parties to complete the QA Environment refresh. *Id*. Ms. Kriewald set a deadline of March 16, 2020, for completion of the OA refresh, and any extensions or exceptions were to be submitted in writing to her by no later than Tuesday, March 10, 2020. *Id*. Requests for extensions or exceptions after that date would not be accepted. *Id*.

**G. March 2020 Written Reprimand**

Ms. Kriewald reprimanded Plaintiff on March 9, 2020, for discourteous and rude behavior toward her supervisor. ECF No. 29-12. During a March 2, 2020 one-on-one meeting, Plaintiff raised her voice and behaved in an unprofessional manner. *Id*. Plaintiff would not answer questions and interrupted Ms. Kriewald when she questioned Plaintiff about an assigned project plan. *Id*. An Employee Relations Business Partner (Human Resources Department) representative told Plaintiff her behavior was unacceptable and unprofessional. *Id*. Ms. Kriewald informed Plaintiff that "failure to correct [t]his behavior will result in further discipline, up to termination." *Id*. Plaintiff refused to sign this reprimand. *Id*.

**H. March 2020 Suspension**

On March 20, 2020, the City suspended Plaintiff for five days (or forty hours) for acts of insubordination and failing to carry out instructions. ECF No. 29-13 at 1. The suspension document details the following reasons for Plaintiff's suspension:

> You failed to follow my instructions regarding the Remedy QA Refresh project On February 24, 2020, specific instructions were provided to you in an Employee Discussion Worksheet regarding information I needed to consider for an extension to the project deadline. On March 10, 2020, you sent an email requesting an extension, but failed to provide information I needed to consider the request. Additionally, on March 2, 2020, I asked you to meet with the QA Remedy team and provide me with a confirmation and record of the meeting. I also followed up with written instructions in an email on March 4, 2020. As of today, you have not provided me with any of the information I requested.

> On February 24, 2020, you were given a deadline of March 16, 2020 for the Remedy QA Refresh project. The deadline was extended to March 17, 2020 due to network outages. You have missed that deadline and the project is still not complete. In addition to missing your deadline, you have yet to follow-up with me regarding the delays in this project.

> These actions are unprofessional, jeopardize your ability to effectively lead a project team and do not comply with the City's Core Values of Professionalism, Integrity and Teamwork. You have received prior discipline regarding your communication with coworkers and criticizing my direction. Any questions you have should be addressed with your direct supervisor. Failure to do so will be considered insubordination and will be disciplined accordingly.

*Id*.

**I. March 2020 Employee Discussion Worksheet**

In this EDW for a March 31, 2020 discussion, Ms. Kriewald documented her ongoing ex-pectations for Plaintiff regarding the Remedy QA Refresh project. ECF No. 29-14 at 1. On March 11, 2020, the project deadline was extended from March 16th to March 17th. *Id*. On March 20, 2020, Plaintiff submitted a status update to Ms. Kriewald that contained three critical issues: (1) a corrupt backup file; (2) a corrupt configuration file; and (3) unspecified issues with the Centralized Configuration Component. *Id*. Ms. Kriewald indicated that any one of these problems could have caused catastrophic results, including data loss, if they would have occurred in the production environment. *Id*. As of March 30, 2020, the project remained incomplete. *Id*. Ms. Kriewald estab-lished a new timetable for completion of Plaintiff's work. *Id*. at 1-2. Ms. Sanchez indicated that Plaintiff refused to sign the EDW. *Id*. at 3.

**J. Notification of Proposed Termination**

On May 4, 2020, the City provided a Notice of Proposed Termination to Plaintiff. ECF No. 29-16. The notice states Plaintiff failed to follow instructions regarding the Remedy QA Refresh project and failed to meet a deadline for the project. *Id*. at 1. Plaintiff failed to meet an April 7, 2020 deadline to import data back into Remedy. *Id*. Plaintiff also failed to submit status reports every four hours and did not provide the updated Issues Log for her work. *Id*. Plaintiff's actions violated several provisions of Section 2 of Rule XVII of the Municipal Civil Service Rules. *Id*. Specifically, Plaintiff engaged in acts of subordination, failed or refused to carry out instructions, and willfully disregarded orders or engaged in other misconduct. *Id*. She was relieved of all duties and placed on administrative leave with pay pending resolution of the proposed Final Termination of Employment. *Id*. at 2. The notice informed Plaintiff she could respond within five "working" days after her receipt of the notice. *Id*.

**K. Final Notice of Termination**

Craig Hopkins, Chief Information Officer, served Plaintiff with a Notice of Final Notice of

Termination on May 18, 2020. Plaintiff's termination was based on the details outlined in the May 4, 2020, Notice of Proposed Termination. ECF No. 29-17. Plaintiff did not respond to the proposed notice, and Mr. Hopkins immediately terminated her employment. *Id*.

**L. Plaintiff's Appeal of Termination and Decision to Uphold the Termination**

On May 20, 2020, Plaintiff appealed her termination. ECF No. 29-18. On May 26, 2021, the Municipal Civil Service Commission issued its unanimous decision upholding Plaintiff's termination. ECF No. 29-19.

### IV. TITLE VII AND 42 U.S.C. § 1983

Plaintiff first asserts claims of discrimination and/or harassment on the basis of race and/or perception of national origin in violation of Title VII and 42 U.S.C. § 1983. *See* ECF No. 11 ¶¶ 20-26. She also asserts retaliation under those statutes. *See id*. ¶¶ 27-32.

**A. Interplay Between Title VII and Section 1983**

"Section 1983 and title VII are "parallel causes of action." *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Cervantez v. Bexar Cty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996)). Thus, the substantive analysis of Plaintiff's discrimination claims "is essentially the same" under either statute. *Id*. (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). Similarly, the same underlying conduct can impose liability under both statutes when both statutes are properly invoked. *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1573-76 (5th Cir. 1989).[2]

---

[2] In *Johnston*, the Fifth Circuit thoroughly examined the relationship between Title VII and § 1983. *See* 869 F.2d at 1575-76. Relying on the Supreme Court's examination of Title VII's legislative history, it resolved the question of whether Title VII preempts § 1983 claims based on the same underlying facts. *Id.* at 1575. It stated:

As the Supreme Court has explained, the "legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes," including §§ 1983 and 1981. *See, Johnson [v. Railway Express Agency*, 421 U.S. 454, 459 (1975)] (citation omitted); *Alexander v. Gardner-Denver Co.*, 415 U.S. [36, 47-48 and n.7 (1974)]. In *Keller v. Prince George's County*, the Fourth Circuit held that Title VII does not preempt a state employee's remedy under § 1983 for employment practices that violate both Title VII and the Fourteenth Amendment. In reaching its conclusion, the court undertook a comprehensive review of the Title VII's legislative history. *Keller*, 827 F.2d [952, 958-62 (4th Cir.

Notably, "Title VII provides the exclusive remedy for a violation of its own terms." *Id.* at 1573. However, *"when a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII." Id.* In summarizing its analysis of these two laws, the Fifth Circuit concluded:

> Although Title VII supplements and overlaps § 1983, it remains an exclusive remedy when a state or local employer violates only Title VII. When, however, unlawful employment practices encroach, not only rights created under Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive. At this point, § 1983 and Title VII overlap, providing supplemental remedies.

*Id.* at 1576.

In this case, Plaintiff has filed suit against the City of San Antonio only and has not brought claims against any public sector employees who would qualify as state actors under § 1983. Moreover, Plaintiff does not identify which rights, independent of Title VII, that she is relying on to support any claim under § 1983. The Court has examined her live pleading and summary judgment response to determine the underlying basis for invocation of § 1983 and cannot identify a separate constitutional or statutory basis for any independent claim under § 1983.

The Court is aware that she could base her § 1983 claims on the Equal Protection Clause of the Fourteenth Amendment, *see Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980), but there is no such reference to an Equal Protection Clause violation in her First Amended

---

1987)]. In 1972, Congress amended Title VII to eliminate the exemption for state and local employers. *Id.* at 958 (citations omitted). As the bill travelled the arduous path through the House and the Senate, whether Title VII would be an exclusive remedy became a matter of intense debate. *Id.* at 958-60 (citations omitted). In its original form, the bill did not affect state and local employees' remedies under § 1983 or § 1981. *Id.* at 958 (citations omitted). After some debate, however, the House drafted a substitute bill, providing that Title VII was the exclusive remedy for discriminatory employment practices. *Id.* at 959 (citations omitted). When the Senate turned its attentions to the bill, it considered and rejected on three occasions proposals to make Title VII an exclusive remedy. *Id.* at 959-60 (citations omitted). The amendments to Title VII that Congress finally adopted did not create an exclusive remedy. *Id.* (citations omitted). Rather, "Congress . . . reaffirmed the federal policy favoring a system of overlapping, and sometimes redundant, remedies . . ." *Id.* at 960. As the *Keller* court's detailed review of Title VII's legislative history reveals, Title VII supplements, rather than preempts, state and local employees' remedy under § 1983.

869 F.2d at 1575.

Complaint (the live pleading) or her summary judgment response. In fact, the only mention of §
1983 in her response to the motion for summary judgment is when she lists her remaining claims,
a list she takes directly from the summary judgment motion. See ECF No. 30 ¶ 2 (listing § 1983
in conjunction with Title VII for claims of discrimination, harassment, and retaliation). She does
not mention any independent claim under § 1983 when addressing her claims in response to De-
fendant's motion. She has failed to press an independent § 1983 claim, and thereby has failed to
preserve such a claim. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 n.4 (5th Cir. 2022)
(recognizing multiple bases for not considering a claim, including abandonment and waiver). Par-
ties "may not merely mention or allude to a legal theory but rather must, at the very least clearly
identify that theory as a proposed basis for deciding the case." *Id.* (cleaned up with citation omit-
ted). Because Plaintiff must rely on a separate constitutional or statutory basis for her § 1983
claims, she cannot base her § 1983 claims on alleged violations of Title VII. *Crain v. Judson
Indep. Sch. Dist.*, No. SA-16-CV-832-XR, 2018 WL 1612857, at *4 (W.D. Tex. Apr. 3, 2018).

When, as here, the plaintiff neither alleges nor presents evidence to support any violation
of a constitutional right or right secured under a federal statute independent of Title VII for any §
1983 claim, the Court has no need to independently address the claim under § 1983. *Johnston*,
869 F.2d at 1575. In such circumstances, it is sufficient to address the discrimination merely under
Title VII. *See id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993) (assuming "that
the *McDonnell Douglas* framework is fully applicable to racial-discrimination-in-employment
claims under 42 U.S.C. § 1983"). And this applies as well to claims for retaliation.

Nevertheless, any potential liability against the City of San Antonio "under § 1983 must be
reviewed" separately in light of *Monell v. Department of Social Services. of New York City*, 436
U.S. 658 (1978). *See Lawson v. Hinds Cty. Sch. Dist.*, No. 3:12-CV-698-DPJ-FKB, 2014 WL
373199, at *2 (S.D. Miss. Feb. 3, 2014). And even if Plaintiff had identified such a right, she has
not presented any evidence to support municipal liability under *Monell*. *See Zarnow v. City of*

*Wichita Falls, Tex.*, 614 F. 3d 161 (5th Cir. 2010) (analyzing municipal liability under the requirements of *Monell*). Thus, any independent claim under § 1983 fails and Defendant is entitled to summary judgment as a matter of law on any such independent claim.

## B. Race and National Origin

Plaintiff characterizes her national origin claim as a "perception of national origin" claim. ECF No. 11 ¶¶ 21, 29. Plaintiff states her race is Mexican and she derives from Mexican descent. Dep. Espina 138:4-13. Although the Court recognizes that claims based on a mistaken belief or perception of national origin are actionable under Title VII (*see* ECF No. 21 at 5-6), there does not appear to be a mistaken belief about Plaintiff's race and/or national origin. Plaintiff's live pleading identifies her as "Hispanic" ECF No. 11 at ¶ 5. The parties do not appear to dispute the fact that Plaintiff's race is either Mexican American or Hispanic[3] and is of Mexican descent. Plaintiff's race-based and national origin-based Title VII claims clearly overlap, and the Court will analyze them jointly under the facts of this case.[4]

## C. Title VII Discrimination and Retaliation

Title VII makes it unlawful for covered employers to discriminate against individuals with respect to their "terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Except as otherwise provided in this subchapter [(Subchapter VI of Title 42 of the United States Code, which encompasses all provisions of Title VII)], an unlawful employment practice is established when the complaining party

---

[3] The Court also recognizes that some courts treat individuals who identify as "Hispanic" as a race, and others as a national origin. *Compare Esquivel v. McCarthy*, No. 3:15-CV-1326-L, 2016 WL 6093327, at *7 (N.D. Tex. Oct. 18, 2016) (treating "Hispanic" as a race) *with Beltran v. Univ. of Tex. Health Sci. Ctr. at Houston*, 837 F. Supp. 2d 635, 640 (S.D. Tex. 2011) (identifying several cases interpreting discrimination based on being "'Hispanic' as being a national origin discrimination claim"). The Court is aware that race and racial and/or ethnic identity can be an extremely sensitive topic, and the Court seeks to treat Plaintiff with the respect she deserves in characterizing her racial identity and/or national origin.

[4] In some cases, such as this case, "national origin discrimination is so closely related to racial discrimination as to be indistinguishable." *Bullard v. OMI, Inc.*, 640 F. 2d 632, 634 (5th Cir. Unit B Mar. 1981). "Courts thus will treat a national origin discrimination claim as a racial discrimination claim, or vice versa, when the national origin and race may be correlated. *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 795-96 (S.D. Tex. 2011).

demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id*. § 2000e-2(m).

Title VII also prohibits employers from retaliating against an employee for (1) opposing any employment practice made unlawful by its provisions and (2) making a charge, testifying, assisting, or participating in "in any manner in an investigation, proceeding, or hearing" under its provisions. *Id*. § 2000e-3(a). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiffs may prove Title VII claims of "intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam), *abrogated on other grounds by Hamilton v. Dallas Cty.*, 79 F.4th 494 (5th Cir. 2023) (abrogating as to requiring discrimination allegations to allege an ultimate employment decision); *accord Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018) (discrimination case). When analyzing Title VII claims of disparate or discriminatory treatment, courts utilize the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) unless there is direct evidence of discrimination. *See Stroy*, 896 F.3d at 698. Similarly, when a retaliation claim is based on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 834-35 (5th Cir. 2022); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021); *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001) ("The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context."). Not only does this framework apply at trial, *see McDonnell*, 411 U.S. at 802, but it also applies on summary judgment, *see Vaughn v. Woodforest Bank*, 665 F.3d 632, 635-36 (5th Cir. 2011).

"Direct evidence of discrimination is evidence which, if believed, would prove the

existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Palacios v. City of Crystal City*, 634 F. App'x 399, 402 (5th Cir. 2015) (per curiam) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). "If an inference is required for the evidence to be probative . . . the evidence is circumstantial, not direct." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002).

Under the *McDonnel Douglas* framework, plaintiffs must first establish "by the preponderance of the evidence a prima facie case of discrimination," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981), or retaliation, *Lindsley*, 984 F.3d at 469. Carrying this initial burden creates an inference or presumption of discrimination, *see Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978), or retaliation, *see Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253; *accord Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (quoting *Burdine*). Nor is it onerous in the retaliation context. *See Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874, 883 n.6 (5th Cir. 2003); *Arismendiz v. Univ. of Tex. at El Paso*, 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008) (FMLA claim). The prima facie case is flexible and necessarily varies in Title VII cases depending on the particular circumstances. *Burdine*, 450 U.S. at 253 n.6.

"In order to establish a prima facie case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Rios*, 252 F.3d at 378. "In work rule violation cases, a Title VII plaintiff may establish a prima facie case by showing either (1) that she did not violate the rule or (2) that if she did, other employees who engaged in similar acts were not punished similarly." *Turner*, 675 F.3d at 892-93.

A prima facie case of retaliation requires the plaintiff to "demonstrate that: (1) she engaged

18

in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists be-tween the protected activity and the adverse employment action." *Lindsley*, 984 F.3d at 469 (quot-ing *Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170 (5th Cir. 2014)); *accord Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). The third element of the prima facie case requires only that the plaintiff establish "a causal link between the protected ac-tivity and [the adverse action]." *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021). This "burden of causation" can be met "simply by showing close enough timing between [the] protected activity and [the] adverse employment action." *Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)).

For both discrimination and retaliation claims, once the plaintiff establishes her prima facie case, the burden shifts to the employer to articulate a legitimate reason for the adverse employment action. *See Owens*, 33 F.4th at 825, 835 (addressing both types of claims). "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *accord Burdine*, 450 U.S. at 254-56; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (citing *Reeves*, 530 U.S. at 142 in context of False Claims Act claim).

If the employer satisfies its burden, the plaintiff then has "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256. At this point, the plaintiff's "burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination," *id.*, or retaliation, *see Owens*, 33 F.4th at 835. Plaintiffs have two alternatives to refute the employer's articulated reason by offering evidence sufficient to create a genuine dispute of material fact. *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004), *abrogated on other grounds by Gross v FBL Fin'l Servs., Inc.*, 557 US 167 (2009) (abrogating applicability of mixed-motives analysis in context of ADEA). Through the mixed-motives alternative, they must show "that the defendant's reason, while true,

is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id*. Through the pretext alternative, they must show "that the defendant's reason is not true, but is instead a pretext for discrimination." *Id*. Under this latter alternative, they must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

To carry this burden through the pretext avenue, the plaintiff "must present 'substantial evidence'" that the asserted reason for the adverse employment action is a pretext for retaliation or discrimination. *See Owens*, 33 F.4th at 826, 835. "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Id*. at 826 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)). And, for retaliation, the pretext inquiry, "requires a greater showing than mere causal connection"—plaintiff must "show that the protected conduct was *the* reason for the adverse action." *Id*. at 835. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 570 U.S. at 352. There is no mixed motives alternative for Title VII retaliation.

With respect to the claims of disparate treatment and retaliation in this case, Plaintiff presents no direct evidence of discrimination or retaliation. Accordingly, the *McDonnell Douglas* framework applies to those claims. For purposes of the instant motion for summary judgment, the Court will assume without deciding that Plaintiff has satisfied the prima facie case. Her Title VII discrimination and retaliation claims still fail because Defendant has proffered a legitimate reason for its employment decision and Plaintiff has not carried her ultimate burden to show that the City's proffered reason is a pretext for discrimination or retaliation. She has not shown that her race or national origin was the but for cause of any adverse employment action. Nor, for purposes of her discrimination claim, has she shown that her race or national origin was even a motivating cause. For these reasons, Defendant is entitled to summary judgment on Plaintiff's Title VII claims of

discrimination and retaliation.

**D. Title VII – Hostile Work Environment**

While not separately categorized as an independent claim, Plaintiff also appears to assert a Title VII claim for harassment or hostile work environment. The precise parameters of this claim are unclear because Plaintiff uses the term "harassment" in conjunction with other claims. Nevertheless, Defendant has carried its burden to show that it is entitled to summary judgment on any asserted claim of harassment or hostile work environment. Plaintiff has not shown any genuine dispute of material fact that precludes summary judgment on such a claim.

To establish such a claim, Plaintiff must demonstrate that (1) she belongs to a protected class;(2) she was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005). While Plaintiff contests summary judgment on this claim, *see* ECF No. 30 at 7-8, she provides no evidence to demonstrate these elements. Although she indisputably belongs to a protected class, she does not demonstrate elements two through four by making assertions in response to the summary judgment motion without providing evidence to at least show a genuine dispute of material fact. Bald assertions in response to the summary judgment motion do not carry her burden. As to the fifth element, Plaintiff merely states that she reported her disagreement with her write-ups and stated a belief that they were retaliatory.

For the reasons stated by Defendant, Plaintiff has not carried her summary judgment burden on this claim. Accordingly, Defendant is entitled to summary judgment on any claim of harassment or hostile work environment.

## V. ADEA – AGE DISCRIMINATION

Courts analyze age discrimination claims under the same *McDonnell Douglas* burden-

shifting framework when the ADEA claim is based on circumstantial evidence. *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 320 (5th Cir. 2014) (per curiam). For an ADEA claim, Plaintiff thus has the initial burden to establish a prima facie case by showing (1) protected class member-ship, (2) position qualification, (3) adverse employment action, and (4) replacement "by someone younger" or was otherwise subjected to adverse action because of her age. *Rachid v. Jack in the Box*, 376 F.3d 305, 309 (5th Cir. 2004), *abrogated on other grounds by Gross v FBL Fin'l Servs., Inc.*, 557 US 167 (2009) (abrogating applicability of mixed-motives analysis in context of ADEA). Once the plaintiff "demonstrate[s] a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff." *Id.* at 312. And, if the defendant carries that burden of production, the burden switches back to the plain-tiff to show the proffered reason is not true but is instead a pretext for discrimination. *Id.* The Plaintiff must show "that age was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 178.

In response to Defendant's motion, "Plaintiff concedes that she was not replaced by a younger, female employee, but rather the younger employee was selected to work on a project that Plaintiff was reassigned from." ECF No. 30 at 7. That is the extent of Plaintiff's response to De-fendant seeking summary judgment of her ADEA claim. Assuming Plaintiff has carried her burden to show a prima facie case, her ADEA claim fails because Defendant has proffered a legitimate, non-discriminatory reason for its actions and Plaintiff has not carried her burden to show that the reason is a pretext. For these reasons, Defendant is entitled to summary judgment on the ADEA claim.

## VI. REHABILITATION ACT

Plaintiff also asserts claims of discrimination and/or retaliation on the basis of disability under the Rehabilitation Act ("RA"). *See* ECF No. 11 ¶¶ 33-37. In her operative pleading, Plaintiff alleges that she "suffers from neck and spine herniated disc trauma" since an unspecified time in

2019, as well as suffering "from a gastrointestinal disorder that is exacerbated by stress." ECF No. 11 ¶ 6. She relies on the same alleged facts as her other claims. *See id.* ¶ 33. While she initially pursued an association discrimination claim under the RA, *see id.* ¶ 35, the Court dismissed it on a prior motion to dismiss, *see* ECF No. 21 at 18.

Defendant argues that there is no evidence that any disability was the but-for or sole cause of any adverse action. ECF No. 29 at 12. It also identifies Plaintiff's deposition testimony as evidence against her claim. *Id.* at 12-13. At her deposition, Plaintiff stated that her FMLA leave for the November 2019 through February 2020 period was for "a gastro internal issue." *See* Dep. Espina 47:19-48:21. She further testified that the basis for her RA claim is that her "back being out and the depression and all of those things that [she] was going through like [her] stomach." *Id.* 166:3–168:25.

In response, Plaintiff does not identify any evidence to show that any disability was the sole cause for any adverse action. She instead contends that "but for" differs from "sole cause." ECF No. 30 at 6. Further, she asserts that she "requested medical leave because of her own disability" and then Defendant wrote her up the very day she returned to work. *See* id. She concludes that "it is plausible that Defendant took [her] disability and disability-related medical leave into its adverse employment decision." *Id.* at 7.

As codified in 29 U.S.C. § 794(a), Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Section 794(a) "prohibits discrimination in federally-funded programs and activities." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

"Rehabilitation Act claims are also analyzed under the *McDonnell Douglas* burden-shifting framework." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 585 (5th Cir. 2021).

> To establish a prima facie case of discrimination under the Rehabilitation Act, "a plaintiff must prove that (1) she is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that she was discriminated against 'solely by reason of her or his disability.'"

*Id.* (quoting *Hileman v. City of Dall.*, 115 F.3d 352, 353 (5th Cir. 1997)). Discrimination as a motivating factor does not satisfy the fourth element. *Id.* To establish a prima facie case of retaliation under the RA, the plaintiff must show: (1) engagement in activity protected by the RA, (2) "she suffered an adverse employment action," and (3) a causal connection between one and two. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 319 (5th Cir. 2013) (per curiam).

Despite her arguments regarding sole and "but for" cause of the adverse action taken against her Plaintiff has presented no evidence to create a triable fact issue that Defendant discriminated against her solely by reason of her disability. Further, because Defendant has stated a legitimate nondiscriminatory and nonretaliatory reason for its employment actions, Plaintiff must show that the proffered reasons are merely a pretext for discrimination or retaliation. For RA retaliation, this means that she must show that her protected act was a but for cause of Defendant's adverse action. *January v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023). Similarly, for her RA discrimination claim, she must show that her disability was the but for cause of the Defendant's adverse action. She has not carried that burden. Accordingly, Defendant is entitled to summary judgment on her RA claims.

## VII. FMLA

To support her FMLA claim, Plaintiff relies on the same alleged facts as her other claims. *See* ECF No. 11 ¶¶ 45-50. Rather than specify a basis for her FMLA claim, she alleges generally that "Defendant's actions . . . constitute unlawful discrimination, harassment, interference, and retaliation by subjecting [her] to unlawful discriminatory and retaliatory actions." *Id.* ¶ 46.

Defendant seeks summary judgment on Plaintiff's FMLA claims based on a lack of evidence that shows she was entitled to FMLA benefits, was prejudiced by any alleged violation of

the FMLA, or that it retaliated against her for requesting or taking FMLA leave. *See* ECF No. 29 at 18-19. It provides Plaintiff's own deposition testimony to support its motion. *See id.*

Plaintiff testified as to why she believed Defendant had violated her FMLA rights. *See* Dep. Espina 169:1-173:17. She stated that Defendant violated FMLA with respect to her request for leave in April 2020 when her mother was entering hospice and after her mother's subsequent passing. *Id.* The day that Plaintiff's mother was told she had to be placed on hospice, Ms. Kriewald told Plaintiff that she had to attend a meeting or be written up for insubordination, but Plaintiff did not go to the meeting; instead, she took care of matters related to her mother's care. *Id.* 174:15-175:22. At that point, Plaintiff did not know whether she was eligible for FMLA leave, but she did not go to the meeting in any event. *Id.* 176:8-17. She also testified that during that whole time period, Ms. Kriewald would get mad at her if she did not join meetings. Id. 176:20-22.

Plaintiff also stated that she alerted Defendant that her mother's hospice team said that the "FMLA will not cover [her] mother's passing and it would be no use to fill out the paperwork" for FMLA. *See id.* 171:22-172:1. She testified that she believed she was already on FMLA when the hospice team told her that. *Id.* 172:4-6. Nevertheless, she testified that Defendant responded: "As far as your FMLA paperwork, you can work with the hospital and hospice to have the time covered before she passed . . . This is completely up to you though." *Id.* 173:2-9.

Plaintiff further testified that her "back physically went out right after [her] mom died and [she] never got a response or anything to that claim." *Id.* 177:3-5. The day after she received her notice of proposed termination, she filed an application for FMLA leave for her back. *Id.* 177:7-12. At that time, she did not know whether she was eligible for FMLA leave. *Id.* 177:15-17. Plaintiff was paid but did not work between the filing of this leave request and the finalization of her termination later in May. *Id.* 179:3-25.

In response, Plaintiff asserts without evidentiary support that she "was prejudiced when Defendant made the decision to terminate her while on medical leave." ECF No. 30 at 11. The

only evidence she provides to support an FMLA claim is that Defendant knew she suffered from depression, and that whether or not Defendant considers Plaintiff eligible for FMLA, Defendant knew that she required a subsequent short-term medical leave as an accommodation, after her mother passed away. *Id*. at 10-11 (citing Dep. Espina 166:3-168:25). However, the cited deposition testimony does not support finding that Defendant knew that Plaintiff suffered from depression during the relevant time period of her termination. She testified that she never discussed her depression with Ms. Kriewald or Mr. Sweet, but she "was crying every day," and she felt that "a lot of [her] team members saw [her]; maybe [Ms. Kriewald and Mr. Sweet] too." Dep. Espina 164:13-25.

"The FMLA prohibits employers from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under' the act." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (quoting 29 U.S.C. § 2615(a)(1)). It also "prohibits employers from 'discharg[ing] or in any other manner discriminat[ing] against an individual for opposing any practice made unlawful' by the act." *Id*. (quoting § 2615(a)(2)). "The second provision of the FMLA is proscriptive, and protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006).

Section 2617(a) provides an enforcement mechanism through a civil action by the employee.

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The "remedial scheme"

embodied in the FMLA "requires an employee to prove prejudice as a result of an employer's noncompliance." *Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007).

"Retaliation claims under the FMLA are analyzed under the *McDonnell Douglas* burden-shifting framework." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021).

> In order to establish a prima facie case for a FMLA retaliatory violation, the employee must show the following elements: 1) he is protected under the FMLA; 2) he sought to return to work before the FMLA leave expired; and 3) the employer failed to reinstate him to the position, or an equivalent position.

*Mauder*, 446 F.3d at 580 (citing 29 U.S.C. § 2614(a)(1) (2000)). The third element conflicts with a prior Fifth Circuit case which stated that "[t]he FMLA's protection against retaliation is not limited to periods in which an employee is on FMLA leave, but encompasses the employer's conduct both during and after the employee's FMLA leave." *Wiggins v. Coast Pro., Inc.*, No. CIV.A. 14-0002, 2014 WL 2768841, at *5 (W.D. La. June 18, 2014) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Rwy. v. White*, 548 U.S. 53 (2006), as noted in *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 706 n.1 (5th Cir. 2016) (noting conflict between *Hunt* and *White* with respect to limiting Title VII retaliation to adverse employment actions that constitute an ultimate employment decision). Relying on Mauder, one court has stated:

> To establish a prima facie retaliation or discrimination claim under the FMLA, a plaintiff must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA.

*Goff v. Singing River Health Sys.*, 6 F. Supp. 3d 704, 709 (S.D. Miss. 2014).

In *Wheat*, the Fifth Circuit states that a plaintiff may "set out a prima facie case of retaliation . . . by establishing that: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action." 811 F.3d at 705. Neither the Fifth Circuit nor the Supreme Court "has decided

whether the heightened 'but for' causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims." *Id*. at 706; *accord*, *Stanton v. Jarvis Christian Coll.*, No. 20-40581, 2022 WL 738617, at *5-6 (5th Cir. Mar. 11, 2022) (discussing cases). In *Richardson*, the Fifth Circuit applied the "mixed-motive framework in 'appropriate cases'—namely, those in which there is evidence that both permissible and impermissible motives played a part in the challenged employment decision." *Stanton*, 2022 WL 738617, at *4 (citing *Richardson*, 434 F.3d at 332-33).

As stated by Defendant, Plaintiff has presented no evidence that she was entitled to FMLA benefits. It is undisputed that she "took 12 full weeks of FMLA for [her] gastro issues." Dep. Espina 167:8-10. There is also a suggestion that Defendant limited FMLA to "12 weeks per rolling calendar year," but Plaintiff was not aware of that limitation. *Id*. 58:6-8. Plaintiff was "not aware of any limitations of how much FMLA leave is available to an employee." *Id*. 58:9-11. She did not know whether she had any available FMLA leave in April 2020. *Id*. 58:12-15. Without showing that she was eligible for FMLA leave, Plaintiff cannot show a violation of § 2615. Furthermore, she has provided no evidence that she was prejudiced by any noncompliance by Defendant. The failure of Plaintiff to provide evidence that she was entitled to FMLA leave appears to be a failure to show that she was protected under the FMLA. A failure to establish a prima facie case of FMLA retaliation or discrimination is sufficient to grant summary judgment. Moreover, Defendant has stated a legitimate nondiscriminatory and nonretaliatory reason for its employment decisions. Plaintiff has presented no evidence to show pretext. And she makes no argument that this is a mixed-motives case requiring application of a modified form of the *McDonnell Douglas* framework as set out in *Richardson*. Moreover, to the extent the mixed motives framework of *Richardson* remains viable, it only applies in appropriate cases, such as when the "court has before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action." *Adams v. Mem'l*

28

*Hermann*, 973 F.3d 343, 353 (5th Cir. 2020). Such evidence is lacking here.

For these reasons, any claim based on the FMLA fails and Defendant is entitled to summary judgment on any such claim.

## VIII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** *Defendant's Motion for Summary Judgment* (ECF No. 29). Defendant has carried its initial burden to show that it is entitled to judgment as a matter of law. Plaintiff has not come forward with any evidence of any genuine dispute of material fact that would preclude summary judgment. Each of Plaintiff's various claims are subject to dismissal as stated herein. By separate filing, the Court will enter Final Judgment in favor of Defendant.

**IT IS SO ORDERED this 28th day of March 2024.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**